## BENJAMIN R. LINKOUS *vs.* JOHN COOPER.

### January Term, 1867.

1. A party is not entitled to a specific execution of a contract for the sale of land when he cannot make a good title thereto.

2. M. died in 1852, leaving no issue, devising land to his widow, who afterwards married C., and had issue by him of two children; afterwards the wife of C. died, and one of the issue; C., sold the land, during the lifetime of his wife, to L., and executed his bond for title. After the death of his wife he brought suit against L., to enforce his vendor's lien, alleging that his sale to him had been confirmed by the circuit court of *R.* county, in a suit of I. H., the surviving infant, by her next friend against him, (C.); to which L. answered, that, C. had no title to the land and could not comply with his contract and that the decree of the said circuit court was without authority of law: HELD:

> That C. could not make a good title, and was, therefore, not entitled to a specific execution of the contract.

*John Cooper* filed a bill in chancery in the circuit court of *Raleigh* county at September rules 1860, alleging that in 1852, one *Henry Massey* departed this life, leaving a widow, *Mariah T. Massey*; that he was seized in fee simple of a certain tract of land lying in said county, known as the *Shumate Place*, and that *Massey* by his last will and testament devised the same to his widow; that complainant *Cooper* had married the widow by whom she had issue of two children, one of whom died in tender infancy, and the other, *Ida Huse Cooper*, still survived; that the wife of *Cooper* had also departed this life, but at her death both of the children were alive; that during the lifetime of his wife, *Mariah*, he had sold the land before mentioned to one *B. R. Linkous*, for the

*See page 1.

sum of 1,000 dollars, and had taken his five several bonds to secure the payment thereof of 200 dollars each, and had executed to *Linkous* a bond for the title to the land; that no part of the purchase money thus secured had been paid; that the complainant would execute a deed with covenants of general warranty and file the same with the papers of the cause; that a decree of the circuit court of *Fayette* county had been rendered confirming the sale to *Linkous*, so far as the interest of the infant, *Ida Huse Cooper*, was concerned, and authorizing a conveyance of the land to be made to *Linkous*; he therefore prayed that the chancellor would enforce his vendor's lien by decreeing a sale of the land, and that *Ida Huse Cooper* and *Linkous* be made parties defendant.

The copy of the decree of the circuit court of *Raleigh* county, filed with the complainant's bill, showed that it was rendered in November, 1859, in a cause wherein *Ida Huse Cooper*, an infant, by *Seth Huse* her next friend was complainant, and *John Cooper*, guardian *ad litem*, was defendant. The following extract from that decree embraces all the matter pertaining to this suit:

"This cause came on this day to be heard upon the bill of said infant by her next friend, and the answer of her guardian *ad litem*, who is her father, and the court being satisfied that both the next friend of said infant, who is her grandfather, and her father, who is her guardian *ad litem*, are both persons of good judgment, discreet, prudent and responsible, and well qualified to judge of the interest of said infant:

Doth adjudge, order and decree, That the sale of the land referred to as having been made, may be perfected; and *John B. Jones*, who is hereby appointed commissioner for that purpose, shall execute a conveyance of the same whenever he may be requested by the father of said infant, to any person. It appearing from affidavit filed, that the land in *Raleigh* county, is considerably improved and reduced to cultivation, and both that tract, and the house and lots in *Fayetteville*, or the improvements thereon, are liable to go to waste if rented, and that a sale would probably be more advantageous to the interest of the infant;

It is further adjudged, ordered and decreed, That *John Cooper*, who is hereby appointed a commissioner for that purpose, may sell the interest of said infant in the house and lots in *Fayetteville*, either publicly or privately, as he may think best; and also the land in *Raleigh*, in case the sale already made cannot be perfected—all acts of said commissioner to be reported to this court, and to remain subject to its control. Said commissioner ......... bond according to law to be approved by the clerk of this court."

At the April term, 1860, *Linkous* filed an answer admitting the fact of the purchase, but alleging that he was informed that the whole title to the land descended to the infant child, *Ida Huse*, from her mother, and that the complainant *Cooper* had only his title by curtesy in the same; that he was informed that the decree of the circuit court of *Raleigh* was without authority of law, and that the complainant was wholly incapable of complying with his contract, and could not procure a good title to said land except by purchase from the infant, *Ida Huse*, after she had arrived at maturity, or by purchase from those to whom it would descend in case of her death during infancy. He also averred his willingness to comply with his contract whenever he could obtain a good title. An answer was filed by the guardian *ad litem* of the infant, simply asking the court to protect her interests. At the September term, 1860, a final decree was rendered, declaring that the court was of opinion that a good and sufficient title could be made to the defendant, *Linkous*, and ordered a sale of the land to discharge the sum being then due on his bonds—400 dollars and interest. But no sale was to take place until the complainant filed a deed to the defendant for the land with covenants of general warranty, and procured and filed a deed from the commissioner as provided by the decree of the circuit court of *Raleigh*. *Linkous* applied to the court of appeals at *Lewisburg* (then *Virginia*) in November, 1860, for an appeal, which was granted, and the cause was subsequently brought to this court by operation of law.

*Lamb* and *Paull*, for the appellant.

The decree in the case of the child, against the father as guardian *ad litem* was a mere nullity. The law authorizes a guardian to file a bill for the sale of his ward's estate under particular circumstances. The next friend has no such right. The guardian has to file his own affidavit to the bill, and prove that a sale of the land will promote the interest of the infant, and the court retains the fund under its own control, so that the infant can sustain no loss. These are some of the safeguards created by law to protect the rights of infants. But here no guardian appears; and instead of protection according to law, the infant's interest is protected as the wolf protects the lamb.

The whole proceeding being without law, the law will hold it to be void.

There was no mutuality in the power of the parties to enforce the contract, and for that reason the bill ought to have been dismissed. *Watts* v. *Kenny et al,* 3 Leigh.

MAXWELL, J. The suit is to enforce the sale made by Cooper of the tract of land in which he has only a life estate, and to enforce the vendor's lien in favor of the said Cooper against the said lands for the payment of the purchase money due, and the decree is in conformity to the bill.

The defendant refuses to take the land unless he can get a good title. The complainant cannot make a good title and is not entitled to a specific execution of his contract. *Goodin* vs. *Vaughn & Co.*, 14 Gratt., 117; *McCarm* vs. *Jones,* 1 Rob. R., 256; *Watts* vs. *Kinney,* 3 Leigh, 272; *Clark et als.* vs. *Reins,* 12 Gratt., 98.

I think the decree ought to be reversed and the bill dismissed with costs to the appellant.

The President concurred.

DECREE REVERSED.